## In re GRANT.
No. 25405.    June 18, 1935.

Edward R. Jones and Warren T. Spies, for State Bar of Oklahoma.

Sam A. Neely and Burns McCain, for respondent.

PHELPS, J.    Disbarment proceedings against G. O. Grant, respondent, were instituted before and heard by the administrative committee for section 21 of the State Bar of Oklahoma, and at the conclusion of said hearing said administrative committee made the following findings of facts, to wit:

"The respondent, G. O. Grant, resides at Tulsa, Tulsa county, Okla., and is a member of the State Bar of Oklahoma. On November 16, 1932, respondent borrowed an automobile from Barnes McCain, a member of the State Bar of Oklahoma and in company with Roy Wiley and Scott Martin, whom he had known a short time prior thereto, at about 9:30 o'clock in the forenoon of said day went to Miami, Okla. Roy Wiley had stated to respondent that he wanted to go to Miami, Okla., to get some whisky or to get some money. Wiley did not inform respondent, Grant, just how he intended to get money, not stating whether any one owed him money or whether he intended to borrow it. Grant's explanation of why he went along was that he had a lawsuit in Tulsa county and represented a woman named Steen who had an action pending in Tulsa county against the American Life Insurance Company; that there was a man by the name of Yearden who interpleaded in the case; that the insurance company had paid $2,700 into the clerk's office. Grant claimed he had information that the bank at Miami had an assignment from Yearden to secure the full amount of the policy and that he thought he could get Yearden to settle the lawsuit so that he and his client could get some money. They reached Miami about 1:00 o'clock on the 16th day of November, 1932, and the bank being closed and while in Miami either Wiley or Martin made an effort to obtain a car and shortly returned and reported that he was unable to get same and stated that he would get a taxi and would get the liquor in the taxi. Thereafter Wiley and Martin procured a taxi and respondent, Grant, drove down the road to the outside of Miami and stopped at a filling station to get some gas for his car and while there

Wiley and Martin in a taxi driven by one Wayne Branson passed Grant and drove to Fairland where they stopped and waited for Grant who overtook them and Grant then drove in the lead in the car borrowed from Barnes McCain, and Wiley and Martin in the taxi driven by Branson following. Grant proceeded along the highway to a point about a mile south and then Grant turned off the road to the right-hand side going west and stopped, and Wiley, Branson and Martin drove up and also stopped, at which time Wiley and Martin and Branson got out of the car in which they were riding and went off to the right side of the place where the cars were stopped through some bushes and shrubbery and Wiley and Martin were about to tie Branson and leave him at that point stating that they intended to tie him out there and use his car. Grant objected to them tying Branson and leaving him in the bushes stating that he would freeze and prevailed upon Wiley and Martin to leave Branson in the car with Grant while they took his car and drove away. Thereupon, Wiley and Martin brought Branson back to the car in which Grant was sitting and Branson's hands at that time were tied behind him. Branson got in the car with Grant and remained with him in the car with his hands tied behind him while Wiley and Martin got in Branson's car and drove off and. were gone between 45 minutes and an hour. While Roy Wiley and Scott Martin were gone Grant remained in the car with Branson permitting his hands to remain tied during the time that Wiley and Martin were gone and made no effort to untie him or to give an alarm and during the time Wiley and Martin were gone, gave Branson $1 to pay for the gasoline that would be used by Wiley and Martin while they were driving Branson's car. Between 45 minutes and an hour after they had driven away in Branson's car, Wiley and Martin returned to the place where they had left respondent, Grant, and stopped under a hill after they had crossed a creek on the side of the road where Grant's (——) was parked. Grant and Branson got out of the car in which they were sitting and started down the hill towards Branson's car where Wiley and Martin had stopped and Grant spoke to Roy Wiley and asked if he got his stuff and Wiley replied no, there was too much law and they were afraid to bring anything. During all this time Branson's hands were still tied. Grant then left Branson with Wiley and Martin and went back up the hill where the car was parked in which he and Branson had been. waiting and when he got back to the car, called to Wiley and Martin and told them they had better come on and they came running up to where he was waiting and got in the car and the three then came back to Tulsa. When driving away from the place where the cars were parked, Grant did not look back and made no inquiry about Branson who had been left under the hill and behind the bushes until they had driven a mile or two when Grant then asked if Wiley and Martin had untied Branson and they replied no, but he was not tied tight and could get loose. Grant with Wiley and Martin reached Tulsa that afternoon about 8:00 o'clock and Grant drove to an apartment occupied by Roy Wiley at 620 N. Main street and both Wiley and Martin got out at that place and Grant came on back to his office in Tulsa and looked over some things in the office and then went home. Grant made no report of what happened at any time to any officer or any other person. About two weeks after the occurrences above narrated, a deputy sheriff came to his office accompanied by Branson, the taxi driver, and Grant was arrested and placed in jail in Tulsa, and kept there for a day or two when he was carried to Miami and had a conference with the county attorney, after which he was released from custody and thereafter testified as a witness for the state in the case against Roy Wiley and Scott Martin pending in the district court of Ottawa county, in which trial Roy Wiley and Scott Martin were convicted of robbery of said Wayne Branson and sent to the state penitentiary.

"Previous to the occurrences above narrated the respondent had borne a good reputation and had held various positions of trust and honor in the state of Oklahoma, having been postmaster of Stilwell, Okla., for four years, was register of deeds of Adair county for two years, had also served as city treasurer, city attorney and city marshal of Stilwell, Okla., and was elected county attorney of Adair county in 1918 and re-elected county attorney in 1920. He was also a delegate to the Republican National Convention from the Second District in 1916 and again in 1920 and several members of the bar of the State Bar of Oklahoma testified that they had known him for varying period of years prior to the hearing before this committee and that he had borne a good reputation as a law-abiding citizen and attorney and that his conduct as an attorney had been ethical."

Upon the foregoing findings of fact the administrative committee concluded that the petitioner's "conduct was such that it rendered him an·unfit and unsafe person to be entrusted with the powers and responsibilities of an attorney and recommended that he be disbarred."

The findings and recommendations, together with the transcript of the evidence and proceedings, were transmitted to the Board of Governors of the State Bar of Oklahoma, and. upon review, the Board of Governors approved the findings and conclusions of

the administrative committee, with additional findings and conclusions as follows:

"That on November 16, 1932, the respondent, G. O. Grant, committed a felony in that he was concerned with the commission of the robbery of Branson of his car (C. O. S. 1808), for which crime Wiley and Martin were convicted, and that by reason thereof he committed a cause for disbarment, to wit, cause 1, in that he has ceased to possess that good moral character prerequisite to the practice of law.

"That by the commission of these acts the respondent committed a cause for disbarment, to wit, cause 2, that he is guilty of the commission of an act, though disassociated from his duties to the courts or to his clients, which rendered him an unfit, unsafe and untrustworthy person to be entrusted with the powers, duties and responsibilities of a member of the bar, even though the commission of such is not punishable as a crime."

On these conclusions the Board of Governors recommended to this court that the respondent be disbarred from the practice of law and that his name be stricken from the roll of the bar of the Supreme Court.

The respondent files his petition for review here.

In respondent's brief he makes the following statement:

"We are favored in the outset of this case with a case in which there is no conflict in the evidence as to any of the material matters presented, and the only question to be considered is whether the evidence, all of which is uncontradicted and undisputed, sustains the charges made."

In Re Tillman, 157 Okla. 166, 11 P. (2d) 511, in the first paragraph of the syllabus we use the following language:

"Findings of Board of Governors of State Bar will not be disturbed by Supreme Court, unless against clear weight of evidence."

Again we used the same language in the first paragraph of the syllabus in Re Purdy, 166 Okla. 31, 25 P. (2d) 1096; and reiterate it in Re Hils, 170 Okla. 427, 40 P. (2d) 1031.

The only defense made by respondent is highly technical, such as might be, in some respects, at least, applicable in a criminal prosecution. In other words, he did not deny any of the material facts, but contents himself by saying that the administrative committee and the Board of Governors made the wrong deduction from the undenied facts.

We have carefully examined the entire record, and find that the facts reflected by this record furnish the material and the foundation upon which we might write an opinion of great length upon the morals and ethics which should govern a member of the bar even in matters disassociated from his duty to the courts and his clients, but we are not convinced that such a course would serve any good purpose in the instant case and shall merely observe that, as we view it, the findings and conclusions of both the administrative committee and the Board of Governors are abundantly sustained by the record, and they are hereby approved.

It is therefore ordered that respondent, G. O. Grant, be, and he is hereby, disbarred from the practice of law in the state of Oklahoma and his name is ordered stricken from the roll of attorneys of the State Bar.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, BUSBY, CORN, and GIBSON, JJ., concur. WELCH, J., absent.